Case No. 22-7190

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff - Appellee*

v.

AHMAD SAYED HASHIMI, a/k/a Jimmy, a/k/a Jimmy Jimski, a/k/a Jamshaid
*Defendant - Appellant*

---

Appeal from the United States Court District Court
for the Eastern District of Virginia

---

## CORRECTED BRIEF OF DEFENDANT-APPELLANT

---

Lawrence D. Rosenberg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700

West Virginia University College of
Law U.S. Supreme Court Litigation
Clinic
101 Law Center Drive
Morgantown, WV 26506


*Counsel for Defendant-Appellant
Ahmad Sayed Hashimi*

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and United States Court of Appeals for the Fourth Circuit Local Appellate Rule 26.1, Defendant-Appellant, Ahmad Hashimi, an individual, states there are no corporate parties that have a financial interest in the outcome of this appeal.

*/s/ Lawrence D. Rosenberg*

December 1, 2023                                        Lawrence D. Rosenberg

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................i

TABLE OF AUTHORITIES .................................................iv

STATEMENT OF JURISDICTION..........................................1

INTRODUCTION ..........................................................1

STATEMENT OF THE ISSUE ...........................................4

STATEMENT OF THE CASE............................................5

I.      PRE-TRIAL PROCEEDINGS ........................................5

      A.      Mr. Johnson And The Government Unsuccessfully Pressured Mr. Hashimi To Accept Plea Deals......................................5

      B.      The Court Rejected Mr. Hashimi's Request For New Counsel..........7

II.      THE TRIAL.......................................................7

      A.      The Government Alleged That Mr. Hashimi Abused Ms. Damte In Furtherance Of The Drug Conspiracy ..............................8

      B.      Mr. Johnson Failed To Counter The Government's Account Of Mr. Hashimi's Alleged Violent Streak................................10

      C.      Mr. Johnson Ignored Mr. Hashimi's Urging To Impeach The Prosecution's Star Witness.................................................10

      D.      Mr. Johnson Attempted To Concede Counts Three And Four To The Court Without Mr. Hashimi's Permission............................12

      E.      Mr. Johnson Explicitly Conceded Counts Three And Four To The Jury And Asked The Jury To Hold Mr. Hashimi Responsible ........................................................13

III.      SENTENCING .....................................................14

IV.      SUBSEQUENT PROCEDURAL HISTORY ..........................15

SUMMARY OF THE ARGUMENT .....................................18

STANDARD OF REVIEW ..............................................20

ARGUMENT ...........................................................20

ii

I.   MR. JOHNSON VIOLATED MR. HASHIMI'S SIXTH
     AMENDMENT AUTONOMY RIGHT BY CONCEDING MR.
     HASHIMI'S GUILT WITHOUT PERMISSION ........................................20

     A.   Mr. Johnson Explicitly Conceded Mr. Hashimi's Guilt As To
          Counts Three and Four, Which Violated Mr. Hashimi's Sixth
          Amendment Right To Choose The Objective Of His Defense.........21

          1.   The Constitution Secures Mr. Hashimi's Right To
               Restrain Counsel From Conceding Guilt.................................21

          2.   Mr. Johnson Disregarded Mr. Hashimi's Restriction
               Against Conceding Guilt..........................................................23

     B.   The District Court Misapplied *McCoy* By Elevating The
          Standard For Finding A Sixth Amendment Violation And
          Casting Mr. Johnson's Concession As A Lawful Strategic
          Choice.............................................................................................26

          1.   The District Court Erroneously Heightened The Standard
               For Finding A *McCoy* Autonomy Violation............................27

          2.   The District Court Erroneously Excused Mr. Johnson's
               Concession By Reframing It As A Strategic Decision............29

II.  MR. JOHNSON IMPLICITLY CONCEDED MR. HASHIMI'S
     GUILT AS TO COUNTS ONE AND TWO BY EXPRESSLY
     CONCEDING COUNTS THREE AND FOUR, WHICH
     SIMILARLY VIOLATED MR. HASHIMI'S SIXTH AMENDMENT
     AUTONOMY RIGHT...............................................................................33

     A.   As Recognized By The Government, The Four Counts Were So
          Intertwined That A Concession As To One Constituted A
          Concession As To All ......................................................................34

     B.   The Court Should Not Excise Functional Concessions Of Guilt
          From The *McCoy* Framework. .......................................................36

CONCLUSION ....................................................................................................38

REQUEST FOR ORAL ARGUMENT .................................................................40

CERTIFICATE OF COMPLIANCE ....................................................................41

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*Bell v. Evatt*,
    72 F.3d 421 (4th Cir. 1995) ................................................................33

*Bordenkircher v. Hayes*,
    434 U.S. 357 (1978)...........................................................................26

*Cox v. Hutto*,
    589 F.2d 394 (8th Cir. 1979) .....................................................37, 38

*Cummings v. Missouri*,
    71 U.S. 277 (1867).............................................................................37

*Elmore v. Ozmint*,
    661 F.3d 783 (4th Cir. 2011) ...........................................................33

*Florida v. Nixon*,
    543 U.S. 175 (2004).....................................................27, 28, 29, 32

*Gannett Co. v. DePasquale*,
    443 U.S. 368 (1979)...........................................................................21

*Hashimi v. United States*,
    139 S. Ct. 377 (2018).........................................................................3

*Kellogg-Roe v. Gerry*,
    19 F.4th 21 (1st Cir. 2021)...............................................................30

*McCoy v. Louisiana*,
    138 S. Ct. 1500 (2018).............................................................*passim*

*Premo v. Moore*,
    562 U.S. 115 (2011)...........................................................................25

*Smith v. Stein*,
  982 F.3d 229 (4th Cir. 2020) ............................................................4

*Strickland v. Washington*,
  466 U.S. 668 (1984)...........................................................22, 32, 33

*United States v. Brown*,
  428 F.2d 1100 (D.C. Cir. 1970) .......................................................38

*United States v. Cronic*,
  466 U.S. 648 (1984)..........................................................................32

*United States v. Dyess*,
  730 F.3d 354 (4th Cir. 2013) ...........................................................20

*United States v. Roane*,
  378 F.3d 382 (4th Cir. 2004) ...........................................................20

*United States v. Roof*,
  10 F.4th 314 (4th Cir. 2021) ............................................................30

*United States v. Rosemond*,
  958 F.3d 111 (2d Cir. 2020) .............................................................32

*United States v. Wilson*,
  960 F.3d 136 (3d Cir. 2020) .............................................................32

*Wiley v. Sowders*,
  647 F.2d 642 (6th Cir. 1981) ..............................................19, 25, 37

**Constutional and Statutory Authorities**

U.S. Const. Amendment VI......................................................................21

18 U.S.C. § 1201 ........................................................................................5

18 U.S.C. § 2261 ........................................................................................5

21 U.S.C. § 841 ..........................................................................................5

21 U.S.C. § 846.................................................................................5

28 U.S.C. § 1291..............................................................................1

28 U.S.C. § 2253..............................................................................1

28 U.S.C. § 2255.......................................................................*passim*

**OTHER AUTHORITIES**

United States Sentencing Commission, *Guidelines Manual*, § 3E1.1....................31

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal under 28 U.S.C. §§ 1291 and 2253. The United States District Court for the Eastern District of Virginia denied Mr. Hashimi's 28 U.S.C. § 2255 motion on August 25, 2022. In the same order, it declined to issue a certificate of appealability. J.A. 862. On October 11, Mr. Hashimi notified the district court that he planned to appeal the denial of the § 2255 decision and request a COA from this Court. J.A. 864. On September 11, 2023, this Court issued a Certificate of Appealability limited to his *McCoy* claim. J.A. 865.

## INTRODUCTION

The Sixth Amendment establishes that "it is the defendant's prerogative, not counsel's, to decide on the objective of his defense." *McCoy v. Louisiana*, 138 S. Ct. 1500, 1505 (2018). In this case, Mr. Ahmad Sayed Hashimi decided to pursue acquittal. However, his appointed counsel, Mr. Bruce Johnson, conceded Mr. Hashimi's guilt to the jury anyway. That concession violated *McCoy* and requires this Court to order a new trial.

Mr. Hashimi was indicted on two drug conspiracy counts, one count of kidnapping, and one count of domestic violence. J.A. 21-22. He pled "not guilty" to all four charges. J.A. 28. Mr. Johnson disagreed with the wisdom of pursuing acquittal. J.A. 839. Over the course of the prosecution, Mr. Johnson and the

1

government presented Mr. Hashimi with at least five plea offers. Mr. Hashimi rejected each one. J.A. 80-81.

Before closing arguments, Mr. Johnson informed the court that he planned to concede Mr. Hashimi's guilt on the kidnapping and domestic violence charges. J.A. 601-602. Mr. Johnson apparently hoped this strategic gambit would secure a sentencing reduction. J.A. 602. There is no evidence in the record that Mr. Hashimi consented to this attempted maneuver. During his closing, Mr. Johnson told the jury:

> The last few days I've done very little, if no questioning relating to the kidnap and domestic violence. Shame on Mr. Hashimi, shame on him. I am sure he was humiliated that Hilina was cheating on him behind his back, I am sure, but that doesn't excuse what he did. And if he were allowed to, he would accept responsibility for that right in front of you.

J.A. 649.

The jury returned a guilty verdict on all counts, and the court sentenced Mr. Hashimi to 300 months in prison. J.A. 712. This Court affirmed his sentence. J.A. 724.

Intervening Supreme Court precedent, however, cast serious doubt on the lawfulness of Mr. Johnson's concession. In *McCoy v. Louisiana*, the Supreme Court clarified that the Sixth Amendment preserves a criminal defendant's autonomy right to "*decide on the objective of his defense*: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove

2

his guilt beyond a reasonable doubt." 138 S. Ct. at 1505 (emphasis added). Mr. Hashimi sought Supreme Court review following the *McCoy* decision. The Court recognized that Mr. Johnson's concession deserved further scrutiny under *McCoy*, granted Mr. Hashimi petition for certiorari, and remanded to this Court for further consideration. *See Hashimi v. United States*, 139 S. Ct. 377 (2018).

This Court again affirmed the district court. It did so, however, for want of "definitive evidence," and stated that "if there are facts not currently in the record before us that call this conclusion into question, Hashimi remains free to raise this claim in a 28 U.S.C. § 2255 motion." J.A. 806-807.

Mr. Hashimi brought the present § 2255 motion exactly as this Court envisioned. He provided two new pieces of evidence that further demonstrate that Mr. Johnson undermined Mr. Hashimi's defense objective: first, Mr. Hashimi's sworn affidavit establishing that he did not grant Mr. Johnson permission to concede guilt, J.A. 813; and second, a note, passed between the two during trial, which shows that Mr. Hashimi still sought acquittal, J.A. 839. Set against a "not guilty" plea and a parade of rejected plea deals, Mr. Hashimi demonstrated that Mr. Johnson ran afoul of *McCoy*. But the district court disagreed, reasoning that Mr. Hashimi's opposition to Mr. Johnson's concession was not clear enough, and that Mr. Johnson's approach had appreciable strategic value. J.A. 846.

A straightforward reading of *McCoy* requires reversal. While "[p]rior to *McCoy*, the Supreme Court had viewed a lawyer's concession of guilt as a tactical choice that counsel could make—in the absence of her client's consent—without exceeding constitutional limitations," defense counsel no longer enjoys that authority. *Smith v. Stein*, 982 F.3d 229, 233 (4th Cir. 2020). When defense counsel concedes his client's guilt without permission, he violates his client's Sixth Amendment autonomy right. And when Mr. Johnson asked the jury to "hold [Mr. Hashimi] accountable for what he did," he committed a structural error requiring a new trial. J.A. 653. This Court should reverse the district court's denial of Mr. Hashimi's § 2255 motion with instructions to conduct a new trial.

## STATEMENT OF THE ISSUE

The Sixth Amendment protects a criminal defendant's autonomy to choose the objective of his defense. In *McCoy v. Louisiana*, the Supreme Court recognized that the Sixth Amendment autonomy right "preserv[es] for the defendant the ability to decide whether to maintain his innocence." 138 S. Ct. at 1509. Here, Mr. Hashimi pled "not guilty" to all four counts of his indictment. The issue presented is whether Mr. Hashimi's defense counsel violated Mr. Hashimi's Sixth Amendment autonomy right by conceding his guilt to the jury anyway.

4

# STATEMENT OF THE CASE

## I.    PRE-TRIAL PROCEEDINGS

Mr. Hashimi was arrested on April 12, 2016, for several narcotics offenses. J.A. 390.  After three days, the district court appointed Mr. Bruce Johnson to represent Mr. Hashimi.  J.A. 18.

Approximately one month later, a federal grand jury indicted Mr. Hashimi on four counts: (1) Conspiracy to Distribute Oxycodone in violation of 21 U.S.C. §§ 841 and 846, (2) Conspiracy to Distribute Cocaine in violation of 21 U.S.C. §§ 841 and 846, (3) Kidnapping in violation of 18 U.S.C. § 1201(a)(1), and (4) Interstate Domestic Violence in violation of 18 U.S.C. § 2261(a)(2).  J.A. 21-22.

At his arraignment one week later, Mr. Hashimi pled not guilty to each charge. J.A. 28.

### A.    Mr. Johnson And The Government Unsuccessfully Pressured Mr. Hashimi To Accept Plea Deals

Mr. Hashimi and Mr. Johnson's pre-trial interactions were riddled with conflict.  In particular, counsel and client frequently seemed interested in pursuing different defense objectives.  This led to repeated communication challenges.

Less than a month into Mr. Johnson's representation, Mr. Hashimi reported feeling pressured by Mr. Johnson to sign an undesirable plea deal.  Days before Mr. Hashimi's indictment, he asked the Federal Public Defender's Office to appoint him replacement counsel.  He explained that Mr. Johnson "has not talked for a total of

more than 50 mins all together since I've been in jail and is strongly pressuring me to sign my plea without even knowing or discussing all the facts in my case." J.A. 19. Mr. Hashimi suspected that Mr. Johnson had not even fully read the government's pre-indictment plea deal, as Mr. Johnson seemed unaware of important provisions in it. J.A. 19.

Mr. Hashimi renewed his request for new counsel at his arraignment, pointing again to Mr. Johnson's behavior regarding the potential plea deal that left their last meeting "on heated terms." J.A. 32. Mr. Hashimi explained that Mr. Johnson had presented him with a plea deal, but subsequently "grabbed it and said, no, just forget it, forget it, we'll just deal with it, I have to go." J.A. 32. Mr. Johnson justified his behavior by referencing Mr. Hashimi's "reluctance" to pursue a plea agreement. J.A. 33. The district court accepted Mr. Johnson's explanation and denied Mr. Hashimi's request for new counsel. The court explained to Mr. Hashimi that "you, obviously, were uncomfortable with the plea offer, and that's absolutely fine, you do what you think you need to do." J.A. 34.

Mr. Hashimi again reported poor communication at the September 23 status conference and requested new counsel. According to Mr. Hashimi, Mr. Johnson failed to obtain the discovery "necessary to defend [him] properly," and neglected to "spend time with him in getting ready for trial." J.A. 75. In explaining that the relationship was nonfunctional, Mr. Hashimi again recounted that "[a]nother time

[Mr. Johnson] came with a plea agreement, it ended with a heated verbal confrontation with him, which he only gave me exactly two minutes of his time before he started shouting and stormed out of the room."  J.A. 78.

During that same conference, the government confirmed that it had extended five plea offers to Mr. Hashimi, and that he had rejected each one.  J.A. 80-81.  Mr. Johnson confirmed that Mr. Hashimi refused to accept the terms.  J.A. 82.  Mr. Johnson further explained that rejecting the plea deals "has been Mr. Hashimi's decision . . . and I have to abide by that."  J.A. 82.

## B.    The Court Rejected Mr. Hashimi's Request For New Counsel

The court ultimately declined Mr. Hashimi's request for new counsel.  It reasoned that, despite the conflict between the two, "Mr. Johnson did extensive negotiations [in pursuit of a plea deal] with substantial success . . . And [Mr. Hashimi] rejected those plea offers.  So that's a decision [Mr. Hashimi] made."  J.A. 83.  In the district court's view, the attorney-client relationship was not beyond repair; Mr. Johnson's repeated attempts to facilitate a plea deal reflected his commitment to the representation.

## II.  THE TRIAL

Mr. Hashimi's three-day trial began on September 26, 2016.  J.A. 87.  As during the pre-trial proceedings, Mr. Hashimi and Mr. Johnson's disagreement on the goals of Mr. Hashimi's defense seeped into Mr. Johnson's approach and

generated further conflict between the two. *See* J.A. 839 (Mr. Johnson chastising Mr. Hashimi for declining a plea deal).

### A.     The Government Alleged That Mr. Hashimi Abused Ms. Damte In Furtherance Of The Drug Conspiracy

In its opening statement, the government theorized that Mr. Hashimi controlled his ex-girlfriend and co-conspirator, Ms. Hilina Damte, through a pattern of control and abuse. J.A. 106. It had charged two instances of Mr. Hashimi's alleged abuse as Counts Three and Four in the indictment. J.A. 21. The prosecution explained that Mr. Hashimi beat and manipulated Ms. Damte in furtherance of his drug conspiracy. J.A. 106. It charged the drug conspiracy as Counts One and Two in the indictment. J.A. 21.

According to the government, Mr. Hashimi led a complex drug distribution network. J.A. 107-108. He allegedly first recruited Ms. Damte to deliver cocaine and collect payment from customers. J.A. 107. But eventually Mr. Hashimi turned to selling Oxycodone. J.A. 108. The government alleged that he again recruited Ms. Damte as a middleperson, and she helped other conspirators pass fake prescriptions at pharmacies to illicitly obtain the drug. J.A. 108-109.

Mr. Hashimi allegedly buttressed his enterprise with his capacity for violence. The government argued that Mr. Hashimi was "very clever and calculating," and "when he can't use [his co-conspirators] or they spurn him, he takes action." J.A.

111.  "This is a case of a drug dealer who repeatedly used violence and intimidation to enforce his will."  J.A. 106.

The government alleged that Mr. Hashimi's violent and controlling approach to the drug enterprise erupted after Ms. Damte disobeyed him.  Ms. Damte allegedly "double-crossed" Mr. Hashimi by secretly keeping Oxycodone pills for herself.  J.A. 111.  Mr. Hashimi allegedly retaliated with physical violence, but Ms. Damte was not deterred.  J.A. 111-112.  Instead, she stole a bag of Mr. Hashimi's cocaine and fled to the company of her friends.  J.A. 112.

Mr. Hashimi and his associates allegedly pursued Ms. Damte.  J.A. 105.  After setting up a bogus drug sale to smoke out Ms. Damte, Mr. Hashimi and his cohort trapped Ms. Damte's group.  J.A. 112.  Mr. Hashimi allegedly identified Ms. Damte and began to beat her.  J.A. 113.  He allegedly moved her to his vehicle to kidnap her, and she eventually escaped to a nearby car.  J.A. 105-106.

The government argued that Mr. Hashimi's kidnapping and violence marked another attempt to control the distribution scheme.  This was not "a random attack and it didn't happen in the heat of the moment," but was instead another instance of Mr. Hashimi using "violence and intimidation to enforce his will."  J.A. 106.  In so claiming, the government echoed its earlier contention that Mr. Hashimi's control over Ms. Damte was "intrinsic to the distribution counts."  J.A. 58.

**B.    Mr. Johnson Failed To Counter The Government's Account Of Mr. Hashimi's Alleged Violent Streak**

Mr. Johnson's opening statement did little to engage or rebut the government's account of Mr. Hashimi's alleged violent streak, despite its centrality to each of the four charges. Rather, his opening statement entirely omitted reference to Counts Three and Four. *See* J.A. 114-115. Mr. Johnson instead proposed that Ms. Damte "ran the show" by doctoring prescriptions, recruiting runners, and collecting proceeds. J.A. 114. Counsel claimed that "this case is about . . . drug addicts [and] drug dealers trying to exaggerate Mr. Hashimi's involvement" in the conspiracy. J.A. 114.

**C.    Mr. Johnson Ignored Mr. Hashimi's Urging To Impeach The Prosecution's Star Witness**

Ms. Damte served as the government's star witness. She testified about Mr. Hashimi's drug business and her role within the conspiracy. J.A. 182-185. She also affirmed the government's allegations of Mr. Hashimi's violent outbursts. *See, e.g.*, J.A. 210.

Ms. Damte discussed other clients and co-conspirators, including a medical professional named Sharon. Ms. Damte supposedly observed Sharon purchase cocaine from Mr. Hashimi, and she confessed to doing the same on Mr. Hashimi's behalf. J.A. 150. But Sharon also had a role in the Oxycodone conspiracy. For

$500, she would verify the validity of Ms. Damte's doctored prescriptions.  J.A. 183-184.

Mr. Hashimi's § 2255 discovery motion revealed handwritten messages exchanged between Mr. Hashimi and Mr. Johnson during or after Ms. Damte's testimony.  In one note, Mr. Hashimi expresses disbelief at Ms. Damte's testimony and encourages Mr. Johnson to try and impeach apparently false testimony:

> MR. HASHIMI:  Its funny how she remembers everything to the teeth precoached.
> MR. JOHNSON:  One of the reasons I recommended the plea to you of 1 Count.  You now have unlimited exposure.
> MR. HASHIMI:  I never met her nor know Sharon we need her to testify.
> . . .
> MR. JOHNSON:  I don't understand why you would take the risk.
> MR. HASHIMI:  She is clearly lying we need to prove it with Sharon.
> MR. JOHNSON:  C'mon Hashimi c'mon dude.  You really think jury is going to totally disbelieve her.

J.A. 810.  And in an affidavit furnished by Mr. Hashimi in support of his § 2255 motion, Mr. Hashimi affirmed, "I did not know, nor have I ever met the individual identified by Ms. Damte at trial as 'Sharon.'"  J.A. 781.

Mr. Johnson, ignoring Mr. Hashimi's instruction, declined to pursue Mr. Hashimi's lead on cross examination.  Instead, he reprimanded Mr. Hashimi for declining to take a plea deal and focused on depicting Ms. Damte as a deceptive person and the mastermind of the conspiracy.  *See, e.g.*, J.A. 270-273.

Mr. Johnson also neglected to challenge Ms. Damte's characterization of Mr. Hashimi as violent and controlling. He conspicuously avoided mention of the alleged domestic violence and kidnapping altogether, and later confirmed that he made no effort to challenge those counts, trumpeting that "everyone knows here that I didn't ask a single question about the assault or kidnapping." J.A. 689. In fact, Mr. Johnson did not simply fail to defend against Counts Three and Four—he also elicited testimony that Mr. Hashimi regularly beat Ms. Damte. J.A. 251-252.

### D.    Mr. Johnson Attempted To Concede Counts Three And Four To The Court Without Mr. Hashimi's Permission

After the defense rested, Mr. Johnson unsuccessfully attempted to remove the kidnapping and domestic violence charges from the jury's consideration. He informed the court that "Mr. Hashimi would like to tender a plea of guilt to kidnapping and interstate domestic violence," although there is no evidence in the record that Mr. Hashimi authorized Mr. Johnson's attempted concession and the court never recorded Mr. Hashimi's consent in an allocution or in any other way. J.A. 601-602.

But because the conspiracy counts were so intertwined with the kidnapping and domestic violence charges—and because the attempted plea came so late in the trial—the court declined to take the two latter counts "off the plate for the jury." J.A. 602. As the government explained, the counts "are intrinsically entwined" and were "charged together for a reason." J.A. 602. After all, "[t]he nature of the control that

the defendant exercised over the primary victim of the kidnapping is in large part the way that he accomplished the distribution of drugs for the Oxycodone and conspiracy counts that are charged in Counts 1 and 2." J.A. 602. The district court denied Mr. Johnson's request. J.A. 603.

### E.    Mr. Johnson Explicitly Conceded Counts Three And Four To The Jury And Asked The Jury To Hold Mr. Hashimi Responsible

The government's closing statement returned to its theme of control. It emphasized Mr. Hashimi's alleged violence toward Ms. Damte. J.A. 637-638.

Mr. Johnson's closing statement affirmed the government's theory and outright conceded the domestic violence and kidnapping counts. He told the jury:

> The last few days I've done very little, if no questioning relating to the kidnap and domestic violence. Shame on Mr. Hashimi, shame on him. I am sure he was humiliated that Hilina was cheating on him behind his back, I am sure, but that doesn't excuse what he did. And if he were allowed to, he would accept responsibility for that right in front of you.

J.A. 649.

Not content with a bare concession, Mr. Johnson recounted Mr. Hashimi's alleged history of abuse. He argued to the jury that "Ms. Damte can lie. How strong would a woman have to be to let a man punch her in the face and beat her repeatedly and look an officer in the eye and say, nothing happened, I beat up myself." J.A. 650.

13

Mr. Johnson concluded by again inviting the jury to find Mr. Hashimi guilty of kidnapping and domestic violence.  He said, "[w]e're asking you to hold him accountable for what he did, but that's it.  There will be a day of reckoning before this judge on that and that alone is what we're requesting.  Don't fall into the trap of holding him accountable and having him punished for something he didn't do."  J.A. 653.

Mr. Hashimi has since sworn under penalty of perjury that "[a]t no time before or during the trial in this matter did I give my attorney, Bruce A. Johnson, Jr., permission to concede, during his closing argument to the jury, my guilt on any counts of the Indictment."  J.A. 780.

After Mr. Johnson conceded that Mr. Hashimi kidnapped and beat Ms. Damte, the jury returned a guilty verdict on all counts.

## III.   SENTENCING

Mr. Johnson emphasized his concession throughout the post-trial litigation. In his sentencing memorandum, he argued that "Mr. Hashimi accepted responsibility for Kidnapping and Interstate Domestic Violence."  J.A. 675.  He noted that he "did not cross-examine the Government's witnesses or otherwise present evidence contesting these charges during trial."  J.A. 675.  By "completely conceding to [the kidnapping and interstate domestic violence] charges during trial" and declining to

"put the Government to its burden of truth," the defense supposedly secured the right to a sentencing reduction.  J.A. 676-677.

At the December 16, 2016, sentencing hearing, Mr. Johnson admitted his sentencing reduction ploy was a long shot.  "I understand what we generally consider acceptance of responsibility, but everyone knows here that I didn't ask a single question about the assault or the kidnapping."  J.A. 689.

Mr. Johnson failed to secure a sentencing reduction.  The court observed that "there was extensive plea negotiations and offers," and despite those offers, "Mr. Hashimi decided to go to trial."  J.A. 694.  Although Mr. Hashimi attempted to "bifurcate out the counts in the trial," "they were so intertwined and the case was at such a stage" that the court had to reject the offer.  J.A. 694-695.

The court sentenced Mr. Hashimi to 300 months in prison.  J.A. 711.

## IV.    SUBSEQUENT PROCEDURAL HISTORY

Mr. Hashimi appealed the judgment on December 20, 2016.  J.A. 717.  He raised various arguments, including that Mr. Johnson provided ineffective assistance of counsel for conceding Counts Three and Four without Mr. Hashimi's consent. But in affirming the district court, this Court declined to address Mr. Hashimi's argument.  It explained that "because this may have been a strategic decision, counsel's ineffectiveness does not appear on the face of the record and thus Hashimi should raise this claim, if at all, in a 28 U.S.C. § 2255 motion."  J.A. 723.

After an unsuccessful *pro se* petition for rehearing *en banc*, J.A. 725, Mr. Hashimi filed a *pro se* petition for writ of certiorari, J.A. 727.  He asked the Supreme Court to remand his case for further consideration in light of the Court's then-recent ruling in *McCoy v. Louisiana*.  In *McCoy*, the Supreme Court held that the Sixth Amendment guarantees a defendant the right to choose the objective of his defense, which includes the right to restrict counsel from conceding guilt.  138 S. Ct. at 1505. The Supreme Court granted Mr. Hashimi's petition and remanded to this Court.

On remand, this Court affirmed the district court again.  It invited Mr. Hashimi to raise the *McCoy* claim in a separate proceeding:

> The record in this case includes no definitive evidence regarding whether Hashimi consented or objected to his counsel's concession of guilt on Counts 3 and 4 prior to closing argument.  Accordingly, on the record before us, we discern no violation of Hashimi's Sixth Amendment rights.  *We note, however, that if there are facts not currently in the record before us that call this conclusion into question, Hashimi remains free to raise this claim in a 28 U.S.C. § 2255 motion.*

J.A. 743-744 (emphasis added).  Mr. Hashimi again sought review from an *en banc* Fourth Circuit, but the court denied his petition.  J.A. 746.

Mr. Hashimi filed a 28 U.S.C. § 2255 motion to vacate his sentence on September 30, 2020.  He argued in part that Mr. Johnson violated his Sixth Amendment right to choose the objective of his defense under *McCoy v. Louisiana* by conceding his guilt on Counts Three and Four—the domestic violence and

kidnapping counts.  Mr. Hashimi further argued that, because those two counts were intertwined with the two conspiracy counts, Mr. Johnson functionally conceded all four.

Mr. Hashimi's motion was supported by new evidence that had not been available to this Court.  First, Mr. Hashimi's affidavit clarified that he never consented to Mr. Johnson's concession.  J.A. 813.  And second, handwritten notes exchanged between the two revealed that Mr. Hashimi had not changed his defense objective but instead sought to discredit Ms. Damte, while Mr. Johnson fixated on his belief that Mr. Hashimi should concede guilt to Counts Three and Four.  J.A. 839.

The district court rejected Mr. Hashimi's motion.  It explained that, notwithstanding Hashimi's affidavit, unlike in *McCoy* there was no evidence that Mr. Hashimi—who expressly pled "not guilty"—"expressly told his lawyer *not* to concede his guilt during closing statements."  J.A. 846.  It went on to find that even "[a]ssuming the statements in Hashimi's affidavit are true, the basis of Hashimi's claim is only that he did not offer his permission to concede guilt to the kidnapping and the interstate domestic violence charges.  There was no contravention of Hashimi's express intent."  J.A. 846.  Instead, "Hashimi's trial counsel's closing argument was consistent with attempting to get this modification to the sentencing enhancement at a later point in time."  J.A. 846.

The district court denied Mr. Hashimi a certificate of appealability to challenge its decision. This Court subsequently issued a COA, and this appeal followed. J.A. 865.

## SUMMARY OF THE ARGUMENT

This Court should reverse the district court's denial of Mr. Hashimi's § 2255 motion.

I.     In *McCoy v. Louisiana*, the Supreme Court held that the Sixth Amendment secures a criminal defendant's autonomy right to "insist that counsel refrain from admitting guilt." 138 S. Ct. at 1505. Mr. Johnson violated that right when he conceded Mr. Hashimi's guilt against his wishes.

A.     The record contains no evidence that Mr. Hashimi altered the objective of his defense at any point during the prosecution. Mr. Hashimi pled "not guilty." J.A. 28. He rejected no fewer than five plea deals. J.A. 80-81. He pushed Mr. Johnson to discredit the government's star witness. J.A. 839. And he testified that he never gave counsel permission to concede any charges. J.A. 813. Under *McCoy*, Mr. Hashimi had the right to decide that "maintain[ing] innocence of the charged criminal acts" was the objective of his defense, and Mr. Johnson could not "override it by conceding guilt." *McCoy*, 138 S. Ct. at 1509. When Mr. Johnson told the jury that Mr. Hashimi was guilty of Counts Three and Four, he violated Mr. Hashimi's Sixth Amendment rights.

18

B.    The district court overlooked Mr. Johnson's constitutional violation by misconstruing *McCoy*.  It first interpreted *McCoy* as requiring Mr. Hashimi to make an "intransigent objection" to Mr. Johnson's concession to preserve his Sixth Amendment right.  J.A. 846.  But that takes *McCoy*'s language out of context.  Mr. Hashimi needed only to set a clear trial goal, and he did that much when he announced his intent to pursue acquittal and rejected several plea offers.  The district court's second error came when it reframed Mr. Johnson's concession as a reasonable trial strategy.  But *McCoy* clearly rejected any attempt to recharacterize concessions as strategic choices within counsel's authority, leaving the decision "whether to plead guilty" "reserved for the client" rather than in "the lawyer's province."  *McCoy*, 138 S. Ct. at 1508.

II.    The Sixth Amendment also prohibits functional concessions of guilt. Where the substance of counsel's statement "amount[s] to the 'functional equivalent' of a guilty plea," counsel violates his client's Sixth Amendment prerogatives.  *Wiley v. Sowders*, 647 F.2d 642, 648–49 (6th Cir. 1981).  And when Mr. Johnson conceded Counts Three and Four, he necessarily conceded Counts One and Two.  After all, the kidnapping and domestic violence allegations underlying Counts Three and Four would not have occurred but-for the events allegedly underlying Counts One and Two.  And no one disputes that Mr. Hashimi did not grant Mr. Johnson permission to concede Counts One and Two.  So even if Mr.

19

Hashimi had not clearly barred Mr. Johnson from conceding Counts Three and Four, Mr. Johnson still "usurp[ed] control of an issue within [Hashimi's] sole prerogative" by functionally conceding guilt on the first two counts. *McCoy*, 138 S. Ct. at 1511.

## STANDARD OF REVIEW

After granting a certificate of appealability, this court reviews the district court's legal conclusions underlying its denial of the § 2255 motion *de novo* and its factual findings for clear error. *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013). It reviews *de novo* mixed questions of law and fact. *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004).

## ARGUMENT

### I.    MR. JOHNSON VIOLATED MR. HASHIMI'S SIXTH AMENDMENT AUTONOMY RIGHT BY CONCEDING MR. HASHIMI'S GUILT WITHOUT PERMISSION

The district court should be reversed for two reasons. *First*, it ignored record evidence demonstrating that Mr. Johnson conceded Mr. Hashimi's guilt against his express wishes. And *second*, it misapplied *McCoy* by locking Sixth Amendment relief behind an elevated standard and erroneously reframing Mr. Johnson's takeover of Mr. Hashimi's autonomy right as an appropriate strategic maneuver. Neither approach is supportable under *McCoy*, and both independently require reversal.

20

### A. Mr. Johnson Explicitly Conceded Mr. Hashimi's Guilt As To Counts Three and Four, Which Violated Mr. Hashimi's Sixth Amendment Right To Choose The Objective Of His Defense

#### 1. The Constitution Secures Mr. Hashimi's Right To Restrain Counsel From Conceding Guilt

The Constitution secures the accused "[i]n all criminal prosecutions . . . the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The phrase "for his defence" establishes that "the accused, and not a lawyer, is master of his own defense." *Gannett Co. v. DePasquale*, 443 U.S. 368, 382 n.10 (1979). The Sixth Amendment thus secures an "autonomy" right for the criminally accused that allows him to set a "defense objective" that his counsel cannot "negate." *McCoy*, 138 S. Ct. at 1509.

Because an accused is "master of his own defense," he—and only he—can set the *goals* of his defense. *DePasquale*, 443 U.S. at 382 n.10. To be sure, defense counsel enjoys some decision-making authority. For instance, "trial management" remains "the lawyer's province," and includes choices such as "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *McCoy*, 138 S. Ct. at 1508 (internal citations omitted). But under the Sixth Amendment, "[s]ome decisions . . . are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745,

751 (1983)).  The accused sets his goals; his counsel determines how best to achieve them.

An attorney who instead overrides an accused's goals and undermines his autonomy right effects a structural harm.  *Id.* at 1511.  A structural harm "'affects the framework within which the trial proceeds,' as distinguished from a lapse or flaw that is 'simply an error in the trial process itself.'"  *Id.* (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)).  Unlike a Sixth Amendment ineffective assistance of counsel violation, an autonomy violation *necessarily* undermines a trial's integrity.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).  As a result, an autonomy claim is "not subject to harmless-error review" and a defendant need not demonstrate prejudice stemming from the harm.  *McCoy*, 138 S. Ct. at 1511.

The Supreme Court recently clarified that counsel violates an accused's Sixth Amendment autonomy right when he concedes his client's guilt without permission. In *McCoy v. Louisiana*, McCoy faced three counts of first-degree murder and a potential death sentence.  *Id.* at 1506.  In the face of overwhelming evidence, McCoy maintained his innocence.  *Id.* at 1506–07.  But his trial counsel determined that McCoy could not avoid capital punishment unless he conceded guilt.  *Id.* at 1506. Over McCoy's protests, counsel conceded McCoy's guilt to the jury.  *Id.* at 1507.

The Supreme Court held that defense counsel's disregard for McCoy's acquittal goal violated his Sixth Amendment autonomy right.  The Court explained

that while counsel maintains control over trial strategy, "[a]utonomy to decide that the *objective* of the defense is to assert innocence" belongs to the accused. *Id.* at 1508 (emphasis added). While "[c]ounsel may reasonably assess a concession of guilt" as the optimal trial strategy, if his client "expressly asserts that the objective of '*his* defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective." *Id.* at 1509 (citing U.S. CONST. amend. VI (emphasis added)). McCoy staked his trial goal as one of acquittal and his counsel ignored that objective.

### 2. Mr. Johnson Disregarded Mr. Hashimi's Restriction Against Conceding Guilt

Mr. Johnson similarly conceded Mr. Hashimi's guilt against Mr. Hashimi's express wishes. Nothing in the record suggests that Mr. Hashimi changed the objective of his defense from pursuing acquittal to accepting guilt. Far from it: Mr. Hashimi rejected every opportunity to concede guilt at every turn of the prosecution. At his arraignment, he pled not guilty. J.A. 28. When the government offered a plea deal, Mr. Johnson told the court that Mr. Hashimi was "reluctan[t]" to pursue it. J.A. 33. By the start of trial, the government had offered Mr. Hashimi no fewer than five plea deals. J.A. 80-81. Mr. Hashimi rejected each one—as was his Sixth Amendment prerogative.

Mr. Hashimi produced two pieces of additional evidence during his § 2255 proceedings that confirm he never altered the objective of his defense. *First*, Mr.

Hashimi's affidavit attests that "[a]t no time before or during the trial in this matter did I give my attorney, Bruce A. Johnson, Jr., permission to concede, during his closing argument to the jury my guilt on any counts of the Indictment." J.A. 780. After rejecting at least five plea deals, it is no surprise that Mr. Hashimi did not give Mr. Johnson permission to suddenly change course.

*Second*, handwritten notes passed between Mr. Hashimi and Mr. Johnson during the trial confirm the affidavit's representations. After hearing Ms. Damte's testimony about an alleged member of the conspiracy named "Sharon," Mr. Hashimi pushed Mr. Johnson to go after Ms. Damte: "She [is] clearly lying we need to prove it with Sharon." J.A. 839. Far from readying his attorney to concede guilt, Mr. Hashimi fixated on undermining the credibility of the prosecution's star witness.

Mr. Johnson undercut Mr. Hashimi's steadfast refusal to concede guilt when he told the jury Mr. Hashimi was guilty of Counts Three and Four:

> The last few days I've done very little, if no questioning relating to the kidnap and domestic violence. Shame on Mr. Hashimi, shame on him. I am sure he was humiliated that Hilina was cheating on him behind his back, I am sure, but that doesn't excuse what he did. And if he were allowed to, he would accept responsibility for that right in front of you.

J.A. 649. And while Mr. Johnson suggested that Mr. Hashimi consented to the maneuver, J.A. 601-602, the record contains no allocution or statements by Mr. Hashimi showing that Mr. Hashimi decided to change his trial objective to

confessing guilt. *Cf. Wiley*, 647 F.2d at 648–49 (emphasis added) ("The defendant's decision to plead guilty cannot be presumed from the plea itself in the context of an otherwise silent record. Instead, the trial court must make an on the record inquiry *of the defendant* to insure that the defendant's plea is voluntary and intelligent.").

Mr. Hashimi engaged the government in plea deal talks several times, but that did not change his defense objective. For example, Mr. Hashimi expressed interest in negotiating a plea deal right before trial, but the government rejected the offer, welcoming Mr. Hashimi to instead "plead to the indictment." J.A. 92. And on the second morning of trial, Mr. Johnson conveyed to the government that Mr. Hashimi wanted to consider another offer, but the government denied the request. J.A. 603.

A defendant's passing interest in discussing a plea deal cannot, without more, prove that he changed his defense objective. *First*, the consequences of accepting a plea deal are appreciably different from the consequences of conceding guilt to a jury. The repercussions of the latter typically far outweigh the former, and the "opprobrium" accompanying a jury's guilty verdict is incommensurable to the condemnation accompanying a plea deal. *McCoy*, 138 S. Ct. at 1508.

And *second*, the legal consequences of treating interest in a plea deal as evidence of an accused's desire to concede guilt to a jury are untenable. That approach would punish a defendant for expressing interest in negotiating with the government by putting his Sixth Amendment autonomy right at risk. *Cf. Premo v.*

*Moore*, 562 U.S. 115, 124 (2011) ("Acknowledging guilt and accepting responsibility by an early plea responds to certain basic premises in the law and its functions."). This would chill pre-trial negotiations with the government in a system that "encourage[s] the negotiation of pleas," and saddle courts with criminal trials that could have been resolved on the front end. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

**B.     The District Court Misapplied *McCoy* By Elevating The Standard For Finding A Sixth Amendment Violation And Casting Mr. Johnson's Concession As A Lawful Strategic Choice**

The district court held that Mr. Johnson's behavior did not offend Mr. Hashimi's Sixth Amendment autonomy right for two reasons. *First*, it held that despite Mr. Johnson's plain disregard of Mr. Hashimi's acquittal objective, Mr. Johnson did not "contraven[e] . . . Hashimi's express intent" because "the basis of Hashimi's claim is only that he did not offer his permission to concede guilt." J.A. 846. The district court apparently reasoned that to secure his Sixth Amendment autonomy right, Mr. Hashimi had to do something *more* than plead not guilty and reject no fewer than five plea offers. *Second*, the district court held that Mr. Johnson's concession was an appropriate strategic choice. Both conclusions misapply *McCoy*.

## 1.    The District Court Erroneously Heightened The Standard For Finding A *McCoy* Autonomy Violation

The district court rejected Mr. Hashimi's Sixth Amendment claim under a harsh standard divorced from *McCoy*'s logic.  It penalized Mr. Hashimi for failing supposedly to proactively bar Mr. Johnson's concession and barred relief on that basis.  To be sure, in *McCoy*, the Court emphasized McCoy's "unambiguous objection[s]" to his trial counsel's plan to concede guilt.   138 S. Ct. at 1507.  But the Court did not set an "unambiguous objection" requirement for a criminal defendant to maintain his autonomy right.  Instead, its language distinguished *McCoy* from a similar Sixth Amendment case, *Florida v. Nixon*, 543 U.S. 175 (2004).  Mr. Hashimi made his defense objective clear, and that is all that *McCoy* requires.

In *Nixon*, the Court considered whether counsel's decision to concede his client's guilt violated the Sixth Amendment.  Nixon's attorney wanted to concede his client's guilt to secure the jury's leniency during the capital trial's penalty phase. *Nixon*, 543 U.S. at 181.  Counsel explained this strategy to Nixon at least three times, but Nixon remained nonresponsive, neither approving nor disapproving of the plan. He instead "gave [counsel] very little, if any, assistance or direction in preparing the case."  *Id.*  The rudderless defense counsel determined that conceding guilt was "the only way to save Nixon's life," and so he did.  *Id.* at 186 (cleaned up).

While the lower court held that defense counsel violated Nixon's Sixth Amendment right, the Supreme Court found counsel's decision unremarkable. The Court allowed that "certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate." *Id.* at 187. But "[w]hen counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest *and the defendant is unresponsive*, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent." *Id.* at 192 (emphasis added).

Read in context, the *McCoy* Court did not set a new "intransigent objection" requirement for an accused to preserve his autonomy right. *McCoy*, 138 S. Ct. at 1510. Rather, it emphasized McCoy's objections to clarify that McCoy was not, like Nixon, "unresponsive." *Nixon*, 543 U.S. at 192. This emphasis makes sense. The *Nixon* Court did not want to penalize defense counsel for forging ahead in good faith in the face of a functionally absent client. But in *McCoy*, counsel plainly lacked approval to hijack his client's defense objective.

Just so here. Mr. Hashimi was not "silen[t] each time information was conveyed to him." *Id.* at 189. Just the opposite: Mr. Hashimi repeatedly complained to the court that Mr. Johnson did not offer him *enough* time to discuss the trial. J.A. 32. Like defense counsel in *McCoy*, Mr. Johnson could not claim—and the record

28

does not suggest—that Mr. Hashimi's defense objective was cryptic or uncommunicated.

Accepting the district court's interpretation of *McCoy* would create strange and untenable consequences for criminal defendants. Under the lower court's approach, it is not enough for a defendant to assert (repeatedly) his innocence to preserve his trial objective. Nor is it enough to *also* reject offers to change his objective. Instead, a defendant must prophylactically state on the record that his counsel cannot decide to concede guilt. It is not clear why the Sixth Amendment would place this additional burden on a criminal defendant, who would otherwise rely on *counsel* to advise him of this rule. To be sure, if a criminal defendant is "unresponsive" and functionally absent from trial, defense counsel enjoys greater latitude. *Nixon*, 543 U.S. at 192. But Mr. Hashimi was present and made his wishes clear, and the record reveals no conversation between counsel and client, nor any statement from Mr. Hashimi, approving of a shift in the defense objective. The district court erred by penalizing Mr. Hashimi for trusting Mr. Johnson to stick to the script.

## 2. The District Court Erroneously Excused Mr. Johnson's Concession By Reframing It As A Strategic Decision

The district court directly contradicted *McCoy* when it excused Mr. Johnson's concession as a strategic move. To further tie Mr. Hashimi's case to *Nixon*, the court explained that Mr. Johnson's concession was "consistent with attempting to get [a]

modification to the sentencing enhancement at a later point in time." J.A. 846. But this justification falters for two reasons. *First*, the Supreme Court forbade reframing Sixth Amendment autonomy violations as strategic choices. And *second*, Mr. Johnson's concession lacked any strategic value.

*First*, the Supreme Court has drawn sharp lines to help courts distinguish which decisions belong with counsel. In *McCoy*, for example, the Supreme Court rejected the lower court's holding that counsel's "concession was permissible . . . because counsel reasonably believed that admitting guilt afforded McCoy the best chance to avoid a death sentence." 138 S. Ct. at 1507. It instead underscored which decisions must stay with the accused, like "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal," and whether to "assert innocence." *Id.* A client's right to choose to go to trial or maintain innocence does not recede into counsel's domain because counsel believes a different path has greater strategic value.

Just as a defendant cannot "declare[] a particular strategy or tactic to be of high priority and label[] it an 'objective,'" counsel cannot hijack his client's objective and call it a strategic choice. *United States v. Roof*, 10 F.4th 314, 353 (4th Cir. 2021). Adopting the district court's approach "would confuse, rather than clarify, *McCoy*'s careful delineation between decisions reserved to the client and those left to the attorney." *Kellogg-Roe v. Gerry*, 19 F.4th 21, 28 (1st Cir. 2021).

*Second*, Mr. Johnson's concession had no strategic value anyway. Mr. Johnson imagined that his concession could secure Mr. Hashimi a sentencing reduction if he spun it as an acceptance of responsibility—although he acknowledged that "this is more of a gray area at this point." J.A. 602. Far from a gray area, Mr. Johnson's ploy was doomed from the start, and it is no surprise the court rejected it.

Mr. Johnson should have known from the start that the Sentencing Guidelines foreclosed a sentencing reduction. The Guidelines allow a defendant who "clearly demonstrates acceptance of responsibility" to obtain a two-level sentencing reduction. United States Sentencing Commission, *Guidelines Manual*, § 3E1.1(a). But the "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial," and Mr. Hashimi did so here—after all, he pled not guilty. U.S.S.G. § 3E1.1, comment. (n.2). While a court might waive this precondition in "rare situations," that occurs only in very particular scenarios, such as when "a defendant goes to trial to assert and preserve issues that do not relate to factual guilt." *Id.* And even if *that* exception applied, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct," and Mr. Johnson's concession came in the *midst* of trial. *Id.*

31

To be sure, some courts recognize a narrow category of instances in which an attorney can offer concessions without offending *McCoy*. But that exception only applies when counsel concedes "an *element* of a crime while contesting the other elements." *United States v. Rosemond*, 958 F.3d 111, 122 (2d Cir. 2020) (emphasis added). Those concessions can be made "in pursuit of an acquittal," so "there is no *McCoy* violation assuming . . . the defendant's objective was to maintain his non-guilt." *Id.* at 123; *see also United States v. Wilson*, 960 F.3d 136, 144 (3d Cir. 2020). Here, by contrast, one cannot reconcile Mr. Johnson's decision to concede entire counts with Mr. Hashimi's goal of pursuing acquittal.

It is telling that Mr. Johnson's errors were so grave that Mr. Hashimi's claim could also prevail under the ineffective assistance of counsel doctrine applied in *Florida v. Nixon*. In an ineffective assistance claim, a defendant must show that counsel's performance "fell below an objective standard of reasonableness," and that he suffered prejudice as a result. *Strickland*, 466 U.S. at 687–88. But where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," courts relieve the defendant of the obligation to prove prejudice. *United States v. Cronic*, 466 U.S. 648, 659–60 (1984).

Mr. Johnson both performed below an objective standard of reasonableness and failed to subject the prosecution's case to meaningful adversarial testing. Mr. Johnson's concession cannot "be considered an appropriate and necessary trial

strategy" devised "after extensively investigating the law" because, as discussed above, the Guidelines facially precluded his concession from holding *any* strategic value. *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995). And Mr. Johnson himself confessed to purposefully sparing the prosecution's case from "meaningful adversarial testing" when he touted at sentencing that "everyone knows here that I didn't ask a single question about the assault or the kidnapping." J.A. 689; *see also Elmore v. Ozmint*, 661 F.3d 783, 859 (4th Cir. 2011) (internal quotation marks omitted) (explaining, "*Strickland* . . . was designed to protect the Sixth Amendment right to a reliable adversarial testing process.").

## II.    MR. JOHNSON IMPLICITLY CONCEDED MR. HASHIMI'S GUILT AS TO COUNTS ONE AND TWO BY EXPRESSLY CONCEDING COUNTS THREE AND FOUR, WHICH SIMILARLY VIOLATED MR. HASHIMI'S SIXTH AMENDMENT AUTONOMY RIGHT

By conceding Counts Three and Four—the domestic violence and kidnapping counts—Mr. Johnson functionally conceded Counts One and Two—the conspiracy counts. If the allegations underlying Counts Three and Four are true, so are the allegations underlying Counts One and Two. And because everyone agrees that Mr. Hashimi wanted to pursue acquittal on the conspiracy counts, even if Mr. Johnson's concession did not violate Mr. Hashimi's autonomy right as to Counts Three and Four, his concession *did* violate Mr. Hashimi's autonomy right as to Counts One and Two.

A.    **As Recognized By The Government, The Four Counts Were So Intertwined That A Concession As To One Constituted A Concession As To All**

The government charged four counts where the truth of one bore on the truth of the others.  The government's theory of the case depicted Mr. Hashimi's alleged abuse of Ms. Damte—as charged in Counts Three and Four—as installments in his attempt to control Ms. Damte and, by extension, the drug conspiracy.  There was no separation in the government's theory and in the evidence at trial between the conspiracy counts and the abuse counts.

From the start of the trial, the government tied Mr. Hashimi's violence to the success of the drug conspiracy.  It theorized that Mr. Hashimi used "violence and intimidation to enforce his will" in the enterprise and keep co-conspirators in check.  J.A. 106.  The government explained that its "theory of the case . . . is that during that period of time when [Mr. Hashimi] was engaged in a romantic relationship with [Ms. Damte] . . . [Mr. Hashimi] exercised a significant amount of control over [her]."  J.A. 56.  To maintain that control, "[Mr. Hashimi] exercised physical violence against [Ms. Damte], which kept her in a state of compliance with his wishes."  J.A. 57.  This included violence when Mr. Hashimi suspected she "was withholding money improperly"—which allegedly triggered Mr. Hashimi's commission of Counts Three and Four.  J.A. 58.

The alleged events underlying Counts Three and Four would not have occurred *unless* the allegations underlying Counts One and Two also occurred. As alleged by the government, Mr. Hashimi beat and kidnapped Ms. Damte because "she had double-crossed him" by keeping Oxycodone pills for herself. J.A. 111. When Mr. Johnson conceded that Mr. Hashimi beat and kidnapped Ms. Damte, he implicitly conceded Mr. Hashimi's role in the drug conspiracy, too. (And more surprisingly, he also undercut his own theory of the case by elevating Mr. Hashimi as a controlling aggressor—the role Mr. Johnson had earlier cut out for Ms. Damte.)

The government acknowledged the interdependence between the four counts. The prosecution explained to the court that "for the drug distribution counts, the nature of the control exercised by the defendant over . . . the kidnapping victim, over [Ms. Damte] in this case . . . is highly relevant. It is *intrinsic* to the distribution counts. It is evidence of their agreement to distribute drugs because when she failed to do so in a manner that he wanted it to happen, that would result in physical violence towards her." J.A. 58 (emphasis added). The government purposefully charged the kidnapping and domestic violence counts hand-in-hand with the conspiracy counts. It could not tell the narrative underlying the indictment any other way.

The district court agreed that the four counts were inseparable. When the government sought to introduce evidence of Mr. Hashimi's prior instances of

domestic violence to prove his controlling nature, the court observed that the evidence was "part and parcel and intrinsic to the conspiracy to distribute the cocaine and Oxycodone." J.A. 62. Indeed, the district court refused to "bifurcate out the counts" in the trial in part because "they were so intertwined." J.A. 694. Neither the prosecution nor the court could imagine untangling the four counts. Because the four counts were intertwined, Mr. Johnson could not help but concede each one when he explicitly conceded Counts Three and Four.[1]

### B.    The Court Should Not Excise Functional Concessions Of Guilt From The *McCoy* Framework.

Mr. Johnson's concession of Counts Three and Four also conceded Counts One and Two. That constituted an "admission of a client's guilt over the client's express objection" and rose to the level of a Sixth Amendment autonomy violation. 138 S. Ct. at 1511. Again, it is no answer that Mr. Johnson might have imagined a strategic edge in his concession. Where "[c]ounsel may reasonably assess a concession of guilt as best suited" to mitigate a conviction's consequences, but "the client may not share that objective," counsel "must abide by [the client's] objective and may not override it by conceding guilt." *See McCoy*, 138 S. Ct. at 1509.

---

[1] Strikingly, Mr. Johnson did not even frame Counts Three and Four as isolated instances of violence to untangle the four counts. Instead, Mr. Johnson elicited testimony that over the course of Ms. Damte and Mr. Hashimi's relationship, he regularly beat her. J.A. 251-252.

Implicit concessions of guilt offend a defendant's autonomy right just as much as explicit concessions of guilt. *McCoy* did not establish a "magic words" test to identify when a counsel's concession is explicit enough to amount to a constitutional violation; "[t]he Constitution deals with substance, not shadows." *Cummings v. Missouri*, 71 U.S. 277, 325 (1867). Instead, it pointed to the *import* of counsel's concession, and considered whether he "usurp[ed] control of an issue within McCoy's sole prerogative." *McCoy*, 138 S. Ct. at 1511.

Other courts have recognized the constitutional significance of functional concessions in the Sixth Amendment context. The Sixth Circuit has observed that "an attorney may not admit his client's guilt which is contrary to his client's earlier plea of 'not guilty,'"—as here— "unless the defendant unequivocally understands the consequences of the admission." *Wiley*, 647 F.2d at 649. The court continued, "[c]ounsel may believe it tactically wise to stipulate to a particular element of a charge or to issues of proof. However, *an attorney may not stipulate to facts which amount to the 'functional equivalent' of a guilty plea*." *Id.* (emphasis added).

Because a defendant's trial rights can be undermined by functional concessions of guilt, courts have policed those concessions with vigor. The Eighth Circuit has held that when counsel's factual stipulation is "the functional equivalent of a guilty plea," the "state trial court was required to question [the defendant] to determine whether he knowingly and voluntarily agreed to the stipulation." *Cox v.*

37

*Hutto*, 589 F.2d 394, 396 (8th Cir. 1979).  Failing to inquire into the defendant's "knowledge and consent[] amounted to constitutional error."  *Id.*  The District of Columbia Circuit has similarly held that where "a stipulation offered by counsel and accepted by the court that appellant committed all the acts charged in the indictment" was very nearly "a plea of guilty . . . a searching judicial inquiry [was] required to determine whether . . . the waiver is made voluntarily with understanding of the consequences of this act."  *United States v. Brown*, 428 F.2d 1100, 1102–04 (D.C. Cir. 1970).

When Mr. Johnson conceded Mr. Hashimi's guilt on Counts Three and Four, he necessarily conceded Mr. Hashimi's guilt on Counts One and Two.  There is no reason to limit the *McCoy* rule to full-throated concessions when implicit concessions inflict the same constitutional injury.  That is why courts carefully scrutinize functional concessions of guilt in other Sixth Amendment contexts, and why this Court should do so here.

## CONCLUSION

For the foregoing reasons, the district court's dismissal of Mr. Hashimi's § 2255 motion should be reversed, and a new trial should be ordered.  If the Court determines that factual issues require further development, it should reverse and remand for an evidentiary hearing.

Dated: December 1, 2023                    Respectfully submitted,


                                           */s/Lawrence D. Rosenberg*
                                           Lawrence D. Rosenberg
                                           JONES DAY
                                           51 Louisiana Avenue, N.W.
                                           Washington, D.C. 20001-2113
                                           Telephone: (202) 879-3939
                                           Facsimile: (202) 626-1700

                                           West Virginia University
                                           College of Law
                                           U.S. Supreme Court Litigation
                                           Clinic
                                           101 Law Center Drive
                                           Morgantown, WV 26506

                                           Counsel for Defendant-
                                           Appellant
                                           AHMAD SAYED HASHIMI

## REQUEST FOR ORAL ARGUMENT

Pursuant to United States Court of Appeals for the Fourth Circuit Local Appellate Rule 34, counsel for Appellant Ahmad Sayed Hashimi respectfully requests that this appeal be scheduled for an oral argument. This appeal raises complex questions about how unusual fact patterns under Sixth Amendment precedent fit into current constitutional jurisprudence. Counsel believes oral argument will assist the Court in setting the parameters of *McCoy v. Louisiana*.

*/s/ Lawrence D. Rosenberg*
Lawrence D. Rosenberg

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certified that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B)(iii), this brief includes 8853 words.

2.      This brief has been prepared using Microsoft Word in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count of this word-processing system in preparing this certificate.

DATED this 1st day of December 2023.          */s/ Lawrence D. Rosenberg*
Lawrence D. Rosenberg
Counsel for Defendant-Appellant

## ERRATA SHEET

Defendant-Appellant Ahmad Sayed Hashimi respectfully submits this errata sheet correcting typographical errors.

| Location | Original Text | Corrected Text |
|---|---|---|
| 1. Page 3, ¶ 3, line 19 | J.A. 879 | J.A. 846 |
| 2. Page 26, ¶ 2, lines 14–15 | J.A. 879 | J.A. 846 |

Defendant-Appellant has also altered the name of the brief to "Corrected Brief of Defendant-Appellant" to reflect these changes.

DATED this 4th day of December 2023.

/s/ Lawrence D. Rosenberg
Lawrence D. Rosenberg
Counsel for Defendant-Appellant